IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE STEELE, | ) | CASE NO. 1:05 CV 178 |
| | ) | |
| Petitioner, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| SAMUEL TAMBI, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Respondent. | ) | |

## I.  Introduction

Before the Court[1] is the pro se petition of Johnnie Steele for a writ of habeas corpus.[2] Steele is now serving a sentence of 15 years to life with an additional three years for a firearms specification at the Hocking Correctional Facility after being convicted of one count of aggravated murder.

In his petition, Steele asserts four grounds for habeas relief.  First, he maintains that he was denied the effective assistance of counsel by trial counsel's failure to:  (a) request a jury instruction on the lesser included offense of involuntary manslaughter, and (b) subpoena defense witnesses that would have supported Steele's entitlement to that instruction.[3] Second, he contends that he was denied a fair trial when the trial court did not instruct the

---

[1] The parties have consented to the exercise of jurisdiction by the Magistrate Judge. ECF # 16.

[2] ECF # 1.  A motion by Steele seeking summary disposition of his petition, ECF # 28, is also pending and will be rendered moot by this decision.

[3] *Id.* at 5.

jury on the lesser included offense.[4]  Third, he argues that he was denied due process when he was convicted without sufficient evidence to prove his guilt beyond a reasonable doubt.[5]  Fourth, Steele submits that his conviction was against the manifest weight of the evidence.[6]  This ground includes a claim that trial counsel was ineffective for failing to subpoena witnesses and to assert certain statutory and affirmative defenses.[7]

As will be more extensively developed below, the Court concludes that Steele's assertions in the fourth ground that his trial counsel was ineffective in not calling certain witnesses and for not raising certain affirmative defenses are unexhausted for not having been first presented to the Ohio appeals court during the direct appeal process.  As such, these claims may not now be presented to Ohio courts and are, therefore, procedurally defaulted.

The Court further concludes that Steele's first and third grounds for relief – that he received ineffective assistance of counsel when counsel did not request a lesser included offense instruction and that he was convicted without sufficient evidence of guilt beyond a reasonable doubt – were ruled upon by the state appellate court in a decision that was not an unreasonable application of clearly established federal law.  The petition as to these grounds must be denied.

---

[4] *Id.*

[5] *Id.* at 6.

[6] *Id.*

[7] *Id.*

Finally, the Court concludes that Steele's second and fourth grounds for relief – that

the trial court should have *sua sponte* instructed the jury on voluntary manslaughter and that

he was convicted against the manifest weight of the evidence – should both be dismissed

inasmuch as they do not state cognizable claims for federal habeas relief.

## II.  Facts and Relevant Court Proceedings

### A.    Trial and sentencing

As recounted by the state appeals court,[8] the underlying facts of the case against Steele

are as follows:

> The evidence showed that [Steele, a 75-year old man with no prior
> criminal record], and the victim, [Sabrina Franklin with whom Steele had an
> on-again, off-again relationship for several years], had a disagreement that
> started in a bar where the two had been drinking earlier in the evening.
> Testimony revealed that [Steele] stated to one of the victim's friends at the bar
> during the disagreement that the victim "wouldn't be happy until [he] killed
> her."  Upon arriving at [Steele's] apartment, [Steele] and the victim had
> another argument. [Steele] testified that the argument was not particularly
> heated or violent; in fact, he testified that he would not have classified the
> discussion he had with the victim at his apartment as an argument, but merely
> a "statement," and he further testified that he was made to feel "less than a
> man" during that discussion.  After this argument or "statement," [Steele]
> calmly proceeded to his bedroom, retrieved a loaded gun from the closet,
> returned to the living room where the victim was sitting, and shot her in the
> leg.  The autopsy later showed that this shot broke the victim's femur and
> lodged in her thigh. [Steele] testified that after the first bullet, the victim told
> him he would have to kill her since he had already shot her in the leg, and
> [Steele] immediately shot the victim again, through the heart. [Steele] did not

---

[8] Factual findings made by the state appeals court on its review of the trial record are
entitled to the presumption of correctness by federal habeas courts. *Brumley v. Wingard*, 269
F.3d 629, 637 (6th Cir. 2001).

summon medical help for the victim, but instead waited hours after the shooting to call his sister and, eventually, the police.[9]

Steele was indicted on one count of aggravated murder.[10]  At trial, Steele did not contest the fact that he shot Sabrina Franklin[11] but, rather, chose to mount a defense around why the shooting occurred.[12]

Toward that end, Steele took the stand as the only witness in his defense, telling the jury, as the state appeals court put it, that he became upset on the night in question by the victim's "interest in other men and obvious unfaithfulness to their relationship, which he considered to be exclusive."[13]  After hearing the victim's "statement" concerning their relationship, Steele testified that he went into the bedroom of his apartment where he retrieved his handgun and then, returning to the living room, confronted the victim with the

---

[9] *State v. Steele*, No. 83388, 2004 WL 1944832, at *2 (Ohio App. 8 Dist., Sept. 2, 2004).  This portion of the state appellate decision is also at ECF # 21, Ex. 7 at 4-5.  A copy of the Westlaw text is attached to this opinion.

[10] ECF # 21, Ex. 1.

[11] *See*, ECF # 22 (trial transcript) at 154 (opening statement of defense counsel).

[12] *Id*. at 154-55.  "Why he did it is going to be an issue here.  He did make a statement to police detailing what happened and perhaps why he did it.  He's 75 years of age.  Victim was 43 years of age.  They had a relationship about three years, sometimes good, sometimes bad.  And I can tell you that his conduct was, perhaps, driven by some of the things his girlfriend said and did, culminating in a very severe argument that night which resulted in some shots being fired."

[13] *Steele*, 2004 WL 1944832, at *3.

gun, intending merely to scare her.[14]  Instead, as noted previously, he admitted he shot her first in the leg and then, fatally, in the chest.[15]

At the close of the state's case,[16] and again at the conclusion of his defense,[17] Steele moved for directed verdicts of acquittal, which motions were denied.  Following instructions from the trial court that directed the jury to consider the lesser included offense of murder if it was unable to agree on a verdict as to aggravated murder,[18] the jury found Steele guilty of aggravated murder with firearms specifications.[19]  Steele was then sentenced to a term of twenty years to life for the aggravated murder, plus terms of one and three years on the firearms specifications, such additional terms to be merged and served consecutively to the sentence for aggravated murder.[20]

## B.     State appeals

Steele did not file a timely appeal of his conviction and sentence.  Instead, after obtaining representation by the county public defender's office,[21] he moved to file a delayed

---

[14] ECF # 23 at 369.

[15] *Id.* at 376-77.

[16] *Id.* at 344-46.

[17] *Id.* at 385-86.

[18] *Id.* at 428-29.

[19] *Id.* at 443-44.

[20] *Id.* at 449.

[21] Steele was represented at trial by Ralph DeFranco, a court-appointed counsel.  *See*, ECF # 1 at 7.

appeal.[22]  That motion was granted,[23] and Steele set forth the following four assignments of

error:

1. Johnnie Steele was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to request a jury instruction on an appropriate lesser included offense.

2. Johnnie Steele was denied both his federal and state constitutional right to a fair trial before a jury, when the trial court did not instruct the jury on the inferior degree crime of voluntary manslaughter.

3. Johnnie Steele was deprived of his liberty without due process of law by his conviction for aggravated murder, which was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt.

4. Johnnie Steele's conviction for aggravated murder was against the manifest weight of the evidence.[24]

The state responded in opposition.[25]  The appellate court then denied all of Steele's

grounds for relief, affirming the judgment of the trial court.[26]

Following the denial of his appeal, Steele, now proceeding pro se, timely sought

review by the Ohio Supreme Court, asserting four propositions of law:

1. Whether Johnnie Steele was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to request a jury instruction on an appropriate lesser included offense.

---

[22] ECF # 21, Ex. 3.

[23] ECF # 21, Ex. 4.

[24] ECF # 21, Ex. 5.

[25] ECF # 21, Ex. 6.

[26] ECF # 21, Ex. 7.  As noted, this decision is also at *Steele,* 2004 WL 1944832.

2.      Whether Johnnie Steele was denied both his federal and state constitutional right to a fair trial before a jury, when the trial court did not instruct the jury on the inferior degree crime of voluntary manslaughter.

3.      Whether Johnnie Steele has been deprived of his liberty without due process of law by his conviction for aggravated murder, which was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt.

4.      Whether Johnnie Steele's conviction for aggravated murder is against the manifest weight of the evidence.[27]

The state again filed a brief in opposition.[28] On December 29, 2004, the Ohio Supreme Court thereupon dismissed the appeal as not involving any substantial constitutional question.[29] The record here does not establish that Steele sought a writ of certiorari from the United States Supreme Court, nor sought post-conviction relief from the Ohio courts.

## C.    Federal habeas petition

On February 2, 2005, Steele, again proceeding pro se, filed the present petition for federal habeas relief asserting the following four grounds for relief:

> *Ground one* – Johnnie Steele was denied his constitutional right to effective assistance of counsel by counsel's failure to request jury instructions on a lesser included offense.
>
> Supporting facts: Trial counsel failed to protect the most fundamental right of his client under the 5th, 6th and 14th Amendments whether by strategy or tactics, when he failed to construct his defense in such a way that would demonstrate entitlement [to a] lesser included offense and subsequent failure to request a jury instruction on the lesser included offense. Counsel failed to

---

[27] ECF # 21, Ex. 8.

[28] ECF # 21, Ex. 9.

[29] ECF # 21, Ex. 10.

act in the best interests of his client when he failed to subpoena Mr. Steele's witnesses, which is his fundamental right to defend his innocence through witness testimony toward entitlement of [sic] lesser included offense.

*Ground two* – Johnnie Steele was denied his state and federal right to a fair trial before a jury when the trial court did not instruct the jury on the inferior degree of the indicted offense which is involuntary [sic] manslaughter.

Supporting facts: Due process rights are implicated and violated when a jury instruction is not given on a lesser included offense where evidence warranting such instruction is present[,] such as the indication that Mr. Steele acted under serious emotional stress or serious provocation[,] which failure on the [part of the] court was a fundamental miscarriage of justice. The prosecution made the point that the victim's statement, "I can f**k whoever I want" while in a long term relationship with Mr. Steele, therefore would be a serious stressor, clearly "serious emotional stress."

*Ground three* – Johnnie Steele was deprived of his liberty without due process of law by his conviction for aggravated murder which was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt.

Supporting facts: The evidence in this case shows Mr. Steele acted under serious provocation/ serious emotional stress occasioned by the victim. The victim stated to Mr. Steele that she had cuckholded [sic] [him] and told him that she could "f**k" whoever she wanted. When Ms. Franklin saw Mr. Steele's gun she taunted him and goaded him into shooting her. There is even a scripture which says "Life and Death" are in the power of the tongue and they that love it shall eat the fruit thereof. The evidence was sufficient to establish mitigating factors: "serious provocation/emotional stress" making Petitioner guilty of voluntary manslaughter.

*Ground four* – Whether Johnnie Steele's conviction was against the manifest weight of the evidence.

Supporting facts: Notwithstanding the due process violations and equal protection of the law, Mr. Steele's right to have compulsory process for subpoenaing witnesses was violated, as was his right against self-incrimination, to have the effective assistance of counsel which encompasses counsel raising all "statutory" and affirmative defenses which includes "temporary insanity," serious provocation/emotional stress. Petitioner asserts that because the evidence proved the mitigating circumstances of provocation,

-8-

the weight of the evidence was not sufficient. Mr. Steele's statement to police and testimony was the prosecutor's case.[30]

As previously noted, the state filed a return of the writ addressing only the first two of the four asserted grounds for relief.[31]  In the return, the state initially contends that Steele's claim of ineffective assistance of counsel, specifically that his trial counsel did not subpoena witnesses on his behalf that could make the case for the lesser included offense, was not presented to the state courts on direct appeal and so should here be dismissed as procedurally defaulted.[32]  The state further argues that the balance of his ineffective assistance claim was denied by the state appeals court in a decision that correctly applied clearly established federal law and so here should likewise be denied.[33]  The state finally asserts, without reference to the state appellate opinion, that Steele was not entitled to an instruction on voluntary manslaughter,[34] or, alternatively, even if he was so entitled, the failure here to give such an instruction was harmless error.[35]

Steele filed a traverse,[36] arguing first that, in essence, it isn't relevant whether he specified to the Ohio courts that his counsel was ineffective for the particular reason that he

---

[30] ECF # 1 at 5-6.

[31] ECF # 19 at 4-5.

[32] *Id*. at 8.

[33] *Id.* at 9-10.

[34] *Id*. at 11-12.

[35] *Id.* at 13-14.

[36] ECF # 24.

failed to subpoena witnesses, since the claim is one of malpractice and so encompasses any and all instances of it committed by counsel.[37]  Moreover, he maintains that the state appeals court did not properly apply clearly established federal law as to effective representation because all the evidence should have been construed in the light most favorable to Steele.[38]

As to the second ground for relief – the purported error by the trial judge in not instructing the jury on voluntary manslaughter – Steele asserts that the evidence that he and the victim had been arguing on the night that she was killed establishes a basis for giving the instruction on voluntary manslaughter[39] and that counsel's failure to make the case for voluntary manslaughter is why the jury did not choose the lesser crime of murder.[40]  He argues that it was plain error for the trial judge here to, *sua sponte*, not have given a charge on voluntary manslaughter.[41]

Steele further contends, as to ground three, that there was insufficient evidence to establish the elements of calculation and design in the killing, since there was no evidence of his making a plan or scheme to kill beyond a momentary deliberation.[42]  Finally, Steele

---

[37] *Id*. at 9-10.

[38] *Id.* at 12.

[39] *Id.* at 13-16.

[40] *Id*. at 16 -17.

[41] *Id.* at 19.

[42] *Id*. at 21, citing *State v. Taylor*, 78 Ohio St. 3d 15, 19, 676 N.E.2d 82, 88 (1977).

makes the argument for ground four that his conviction was supported by evidence of such

"poor and unreliable quality" that this case is one where "the jury clearly lost its way."[43]

# III.   Analysis

**A.    Steele's contentions that his trial counsel was ineffective – in ground one for not calling witnesses that would support asking for a charge on the lesser included offense of voluntary manslaughter and in ground four for not raising certain affirmative defenses – are unexhausted and should be dismissed as procedurally defaulted.**

*1.    Standard of review/fair presentment/exhaustion/procedural default*

Prior to seeking federal habeas relief, a state prisoner must first exhaust available state

remedies by fairly presenting all federal claims to the highest court in the state.[44]   This

requirement is usually met by having the state prisoner assert his federal claim through one

round of the state's established review procedure.[45]   Federal habeas courts lack jurisdiction

to address any claim that is not exhausted as a result of having been first fairly presented to

the state courts.[46]   A federal habeas court may raise and consider the issue of exhaustion

*sua sponte.*[47]

---

[43] *Id.* at 26.

[44] *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

[45] *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[46] *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

[47] *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004).

The petitioner bears the burden of proving that the asserted grounds for relief have been exhausted.[48]  A federal habeas petitioner does not fairly present a federal claim to a state court merely by reciting the facts underlying the claim,[49] nor by making general allegations that "due process" or "fair trial" rights have been violated.[50]  Moreover, fair presentment of a claim means that the "same claim, under the same theory" must be argued to the state court as is presented in the federal habeas petition.[51]

Where a federal habeas court is presented with a petition containing both exhausted and unexhausted claims, the general rule is that such a mixed petition must be dismissed, so long as a remedy is still available in state courts for the petitioner to pursue.[52]  However, if an adequate and independent state ground forecloses further consideration of the unexhausted claim in state courts, the petitioner may have technically exhausted state remedies because none are available to him.[53]  The claim, then, would be barred from consideration by the federal habeas court not for failure to exhaust, but for procedural default.[54]

---

[48] *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

[49] *Picard v. Connor*, 404 U.S. 270, 277 (1971).

[50] *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

[51] *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004), citing *Pillete v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).

[52] *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).

[53] *Banks v. Jackson*, 149 F. App'x 414, 418 (6th Cir. 2005).

[54] *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Since, in this case, procedural default would not rest on the "last state court rendering judgment on the claim at issue, in fact, enforc[ing] the applicable state procedural rule so as to bar that claim,"[55] a federal habeas court must exercise caution in deciding, without the benefit of a state court decision, that a state procedural rule would necessarily bar state consideration of the federal claim being asserted for the first time in the habeas petition.[56]

However, where it is clear that "a petitioner's claims in federal habeas rest on different theories than those presented in state courts, they are procedurally defaulted."[57]

**2.      *Steele's theories of ineffective assistance in ground one and ground four – that counsel should have called witnesses specifically to lay the groundwork for a charge of voluntary manslaughter and that counsel should have asserted affirmative defenses such as temporary insanity – were never fairly presented to Ohio courts and so are procedurally defaulted and should be dismissed.***

A review of those portions of Steele's briefs before both the Ohio appellate court[58] and the Supreme Court[59] dealing with the ineffective assistance of counsel claim discloses that in neither case did Steele raise either the argument that his trial counsel was ineffective for not calling certain witnesses or that counsel was ineffective for not asserting affirmative defenses such as temporary insanity. In both instances, Steele limited his claim solely to the

---

[55] *Hicks*, 377 F.3d at 551.

[56] *See*, *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

[57] *Broe v. Warden*, No.1:05-cv-025, 2006 WL 2993410, at *12 (S.D. Ohio, Oct. 19, 2006), citing *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002).

[58] ECF # 21, Ex. 5 at 7-11.

[59] *Id*., Ex. 8 at 4-7.

contention that counsel was ineffective for not asking that the court give an instruction on voluntary manslaughter.

As the Supreme Court has noted, due regard for the principle of federalism that underlies the exhaustion doctrine requires that state courts be given a full and meaningful chance to rule upon the same claim, under the same theory as is presented to the federal habeas court.[60]  Plainly, that cannot be accomplished when, as here, wholly new theories of ineffective assistance of counsel, never before argued to an Ohio court, are unveiled for the first time in the federal habeas petition. Thus, Steele's claims in ground one and ground four are not the same claims under the same theories as were presented to the Ohio court.  As such, these claims are in a similar posture to those ineffective assistance of counsel claims presented to the Sixth Circuit in *Lorraine v. Coyle*, and rejected as being procedurally defaulted.[61]  Steele has failed to exhaust those claims.

As the Supreme Court observed in *O'Sullivan v. Boerckel*,[62] where the state court remedy for an unexhausted claim is no longer available, procedural default bars that claim.[63] The Ohio remedy for ineffective assistance of trial counsel, where different counsel represents the defendant on appeal, is by way of assignment of error in the direct appeal.[64]

---

[60] *See*, *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) citing *Picard*, 404 U.S. at 275.

[61] *Lorraine*, 291 F.3d at 425.

[62] *Boerckel*, 526 U.S. 838.

[63] *Id.* at 848.

[64] *State v. Cole*, 2 Ohio St. 3d 112, 113, 443 N.E.2d 169, 171 (1982).

Steele has had his direct appeal with new counsel, and no further recourse to that remedy is available to him. The time for seeking reconsideration on reopening of his direct appeal has passed.[65]

Inasmuch as these claims are procedurally defaulted, and Steele has made no attempt to excuse that default, the claims are properly dismissed.

**B.      Steele's assertion in Ground One that his trial counsel was ineffective for failing to request an instruction on a lesser included offense was denied by the state appeals court in a decision that was not an unreasonable application of *Strickland v. Washington*.[66]**

*1.      Standards of review – unreasonable application/ineffective assistance*

Where a state court correctly identifies clearly established federal law and then applies it to a habeas claim, a federal court may grant the writ only if that state decision was an "unreasonable application" of such clearly established federal law.[67] The proper inquiry for the federal court under this analysis is whether the state court ruling was "objectively unreasonable," and not simply erroneous or incorrect.[68]

The governing standard for assessing claims of ineffective assistance of counsel was articulated in *Strickland v. Washington* as follows:

> First, a defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that

---

[65] Ohio R. App. P. 26(A) and (B).

[66] *Strickland v. Washington*, 466 U.S. 668 (1984).

[67] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[68] *Id.* at 409-11.

the deficient performance prejudiced the defense.  This requires that counsel's errors were so serious as to deprive the defense of a fair trial, a trial whose results are unreliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown of the adversary process that renders the result unreliable.[69]

Both prongs of this test must be met to support the grant of the writ, but courts are not required to conduct an analysis under both if the petitioner fails to establish his right to relief under one element.[70]

With respect to the first, or "deficiency," prong of the analysis, the Supreme Court has stressed that the review must be "highly deferential" to the trial attorney.[71]  The habeas court must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[72]

In that regard, a reviewing court may not indulge in hindsight, but must evaluate the reasonableness of counsel's performance in the context of the circumstances existing at the time of the alleged error.[73]  Thus, it is particularly difficult to attack trial counsel's tactical decisions.[74]  A defendant's challenge to such decisions must overcome the presumption the disputed action was in furtherance of sound trial strategy.[75]

---

[69] *Strickland,* 466 U.S. at 687.

[70] *Id.* at 697.

[71] *Id.* at 689.

[72] *Id*. at 690.

[73] *Id.*

[74] *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

[75] *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

To satisfy the second or "prejudice" element of the *Strickland* test, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[76]  Where one is left with pure conjecture or speculation as to whether the result would have been different, there has not been a sufficient showing of prejudice.[77]

**2.**    ***The state appeals court here did not unreasonably apply Strickland in finding that Steele did not receive ineffective assistance of counsel in regards to counsel not requesting a jury instruction on a lesser-included offense.***

Here, the state appellate court initially noted that a defendant is entitled to a jury instruction on a lesser included offense only if the evidence presented at trial supports such a charge.[78]  It observed further that there was ample evidence that Steele had been arguing with the victim during the course of an evening of drinking, had continued the argument when they returned to Steele's apartment, that Steele had left the victim in one room to walk to another room where he retrieved the gun and walked back to where the victim was sitting, at which time Steele fired one shot that merely wounded the victim and only fired the second, fatal shot after the victim told him he would have to kill her.[79]

---

[76] *Strickland*, 466 U.S. at 694.

[77] *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004).

[78] *Steele*, 2004 WL 1944832, at *1.

[79] *Id.*, at *2.

As the court stated, there was therefore "an abundance of evidence that the appellant committed this crime with prior calculation and design," as would support a guilty verdict for the crime charged, and not while under the "'influence of sudden passion or a sudden fit of rage,'" as would be necessary to support a finding of guilt for voluntary manslaughter.[80]

Accordingly, if there was no basis for the jury finding the defendant guilty under a voluntary manslaughter charge, the court reasoned that there could be no basis for concluding that his trial counsel was ineffective for not requesting such a charge.[81] Moreover, since the jury here was given the option of convicting Steele for the lesser included offense of murder and declined to do so, it cannot be said that the decision not to request a charge on an even lesser offense prejudiced Steele.[82] Accordingly, after outlining the two specific elements of the *Strickland* analysis, the state court applied them to the facts of this case and concluded that Steele could not meet either prong of the *Strickland* test, thus denying him relief.[83]

Upon review, it is apparent that the state court here correctly identified *Strickland* as the clearly established federal law applicable to this claim, and further that the court's application of *Strickland* to Steele's case was not unreasonable. Even if evidence existed in the record to justify a manslaughter instruction, the jury rejected another, more serious, lesser included offense of murder in favor of aggravated murder. As discussed more fully below,

---

[80] *Id.*

[81] *Id.*, at *3.

[82] *Id.*, at *2.

[83] *Id.*, at *3.

the record contains sufficient evidence to support the jury's verdict.  Consequently, Steele's

first claim for habeas relief is denied.

**C.** **Steele's claim in Ground Two that the state trial court should have *sua sponte* instructed the jury on the offense of voluntary manslaughter does not state a claim for federal habeas relief and so should be dismissed.**

*1.* *Standard of review – failure to instruct on a lesser-included offense in non-capital cases.*

As the Sixth Circuit has stated:

> Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, it has not so held in noncapital cases.  To the contrary, the Sixth Circuit has held that failure to instruct on a lesser included offense in noncapital cases is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[84]

*2.* *Steele's claim in Ground Two that the trial court should have, on its own, instructed the jury as to voluntary manslaughter, does not state a claim for federal habeas relief and so should be dismissed.*

Here, the maximum sentence to which Steele was exposed was 23 years to life.[85]  As

such, his trial was not a capital case involving the possible use of the death penalty.

Accordingly, the failure of the trial judge here to *sua sponte* instruct the jury on an additional

lesser included offense is not, even if erroneous, "an error of such character and magnitude

to be cognizable in federal habeas review...."[86]

Therefore, Ground Two of Steele's petition is properly dismissed.

---

[84] *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (citations omitted).

[85] *See*, ECF # 22 at 7-11 (transcript of potential plea bargain).

[86] *Bagby v. Sowders*, 894 F.2d 792, 798 (6th Cir. 1990) (plurality opinion) (en banc).

-19-

**D.  The state appellate court's denial of Steele's Ground Three – that his conviction was not supported by sufficient evidence – was not an unreasonable application of the clearly established federal law of *Jackson v. Virginia*.**

*1.  Standard of review – sufficiency of the evidence*

Despite the general prohibition against federal habeas review of issues of state law,[87] a claim that the evidence was insufficient to convict implicates the defendant's rights under the Due Process Clause, which forbids the state from convicting a person of a crime without proving the elements of that crime beyond a reasonable doubt.[88]

Sufficient evidence supports a conviction if, after viewing the evidence and all permissible inferences to be drawn therefrom in the light most favorable to the state, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[89]  This standard does not permit the reviewing court to make its own subjective determination of guilt or innocence, but gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts.[90]

---

[87] *See*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[88] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

[89] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[90] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

-20-

**2.**    ***The state appeals court properly applied Jackson and did not unreasonably apply it in concluding that Steele's conviction was supported by sufficient evidence.***

As noted, the state court here correctly identified *Jackson* as the clearly established federal law controlling in this instance.[91]  It then noted that Steele had admitted causing the death of the victim, so that only the issue of whether he did so with prior calculation and design was before the jury.[92]  The court further noted that finding prior calculation and design rests upon consideration of the totality of circumstances surrounding the killing.[93]

In that regard, the state court found that the jury had before it evidence of Steele's "prior statements [to the victim], coupled with the time it took to walk from the living room to the bedroom, retrieve the gun, carry it back to the victim's presence outside of her line of sight, shoot her in the leg, converse briefly with her and then discharge the fatal shot...."[94] All of which the state court found, taken together, "evidence an intent to end [the victim's] life" with premeditation, since "they do not evidence 'an instantaneous eruption of events.'"[95]

Although Steele here strenuously contends, as he did in the state courts, that he was under the influence of great passion brought about by the victims' remarks to him,[96] and that

---

[91] *Steele*, 2004 WL 1944832, at *3.

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* (citation omitted).

[96] *See*, ECF # 24 (traverse) at 22-24.

he only intended to "scare" the victim with his gun,[97] the jury was entitled not to believe that explanation and to draw the inferences that the state did as to premeditation.  This Court, in any event, does not sit to reconsider and reweigh the evidence so as to reach the conclusion preferred by Steele.  The state appellate court correctly identified *Jackson* as the controlling federal law and then was not unreasonable in concluding that, after drawing all permissible inferences from the evidence in favor of the state, any rational trier of fact could have found that the state proved all the necessary elements of aggravated murder in this case.  Consequently, Steele's claim for relief in Ground Three of his petition is denied.

**E.     Steele's claim in Ground Four that his conviction was against the manifest weight of the evidence does not state a cognizable claim for federal habeas relief and should be dismissed.**

Steele maintains, based on a faulty reading of *Tibbs v. Florida*,[98] that the federal Constitution requires federal habeas courts to consider weight of the evidence arguments as part of fundamental due process analysis.[99]  As the state appeals court here noted, a reviewing court considering a claim based on the weight of the evidence, must weigh the evidence and

---

[97] *Id.* at 24.

[98] *Tibbs v. Florida*, 457 U.S. 31 (1982). Tibbs was an appeal from the Florida state courts raising the issue of whether double jeopardy attached if the state appellate court had found, as a matter of state law, that a conviction was against the manifest weight of the evidence.  *Id.* at 43.  *Tibbs* does not stand for the proposition, as Steele asserts, that a federal habeas court must review claims for relief based on state convictions being against the manifest weight of the evidence.

[99] *See*, ECF # 24 (traverse) at 25.

resolve issues of credibility to determine if the jury "lost its way" and created such a manifest miscarriage of justice as to require reversal.[100]

In a federal habeas matter however, as is plainly stated in *Herrera v. Collins*, a federal habeas court expressly may **not** undertake to weigh evidence, resolve conflicts in testimony, or otherwise make its own determination of guilt or innocence.[101]

Thus, the question of whether a verdict is against the manifest weight of the evidence is one of state law and, to the extent that a federal habeas petitioner bases a claim upon state law, such a claim does not state a cognizable basis for habeas relief.[102]  An alleged violation of state law can serve as a basis for federal habeas relief only if the petitioner can show that there was a denial of "fundamental fairness" in the trial.[103]

Here, as the state court observed, there was little credible evidence of provocation or any other mitigating factor.  The jury had substantial evidence as to what occurred the night of the murder, including Steele's own version of the facts, and, in light of its unique role as the fact finder, determined that the state's understanding of the basic facts was more credible than Steele's.  If this claim is nothing more than a restatement of the previous ground concerning the sufficiency of the evidence, that argument has been addressed.  To the extent

---

[100] *Steele*, 2004 WL 1944832, at *4.

[101] *Herrera*, 506 U.S. at 401-02.

[102] *See*, *Lewis*, 497 U.S. at 780.

[103] *Id.*

that it asks this Court to become the thirteenth juror in an Ohio trial court and reweigh the

evidence, it does not state a cognizable claim for federal habeas relief.

Consequently, Steele's fourth ground for relief is dismissed.

## IV.  Conclusion

Accordingly, Steele's petition is denied in part and dismissed in part as is more fully

detailed above.

Dated:  May 7, 2007                              s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge